UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEVAUGHN MATHUS and SONIA COFFEE <br>         Plaintiffs <br><br>     v. <br><br> VILLAGE OF UNIVERSITY PARK and DEBORAH WILSON, <br>         Defendants | No. 23 CV 15352 <br><br> Judge Jeremy C. Daniel |

**ORDER**

Defendant Village of University Park's motions to dismiss [30, 56] are denied. The defendant shall answer the complaint by November 11, 2024. The October 22, 2024, status hearing is stricken.

**STATEMENT**

The plaintiffs filed this action against the Village of University Park ("University Park") and Deborah Wilson, the former Chief of the University Park Police. (R. 24 ("FAC").)[1] The complaint asserts claims for false arrest and malicious prosecution under 42 U.S.C. § 1983 against Wilson and University Park, Counts I and II, respectively. The complaint also asserts Illinois state law claims, indemnification against University Park, Count III; malicious prosecution against both defendants, Count IV; and a violation of the Illinois Freedom of Information Act ("FOIA"), 5 ILCS 140/1 *et seq.*, against University Park, Count V.[2]

The complaint alleges that Plaintiff Sonia Coffee is the manager of the University Park golf course where Plaintiff Devaughn Mathus is employed. (FAC ¶ 9.)[3] On November 4, 2021, Wilson visited the golf course and allegedly entered using a crowbar. (*Id.* ¶ 6.) Sometime thereafter undisclosed in the complaint, University Park

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.
[2] The complaint contains a clerical error as it skips numeration of Count IV. For clarity, ¶¶ 48–51 are referred to as Count IV and ¶¶ 52–59 are referred to as Count V.
[3] The following description of the factual allegations underlying the plaintiffs' claims is drawn from the complaint and is presumed true for the purpose of resolving the pending motion. *See Vimich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

issued a memorandum prohibiting Wilson from the golf course absent prior notice to the golf course. (*Id.* ¶ 7.)

Nevertheless, Wilson allegedly returned to the golf course on December 16, 2021. (*Id.* ¶ 8.) On that day, Wilson encountered Coffee as she exited her office; Wilson did not explain why she was at the golf course. (*Id.* ¶ 10.) Wilson's alleged "presence, statements, demeanor, and behavior" demonstrated that she sought to "provoke an incident," causing the golf course employees to feel "concerned and uncomfortable." (*Id.* ¶ 11.) When Coffee tried to retreat into her office, Wilson followed closely behind and stood close to Coffee. (*Id.* ¶ 12.) Coffee asked Mathus to stand between her and Wilson, which he did. (*Id.* ¶ 14.) While Coffee was trying to open her office door, Wilson "initiated physical contact" with Mathus. (*Id.* ¶ 17.) Wilson then allegedly began shouting that she was being choked and assaulted. (*Id.* ¶ 20.) Mathus told Wilson that her exclamations were untrue. (*Id.* ¶ 22.)

Police arrived an undisclosed amount of time later and arrested Mathus at Wilson's direction. (*Id.* ¶ 23.) Wilson allegedly caused two false criminal charges to be filed against Mathus. (*Id.* ¶ 24.) Following a trial on or about April 13, 2023, Mathus' charges were dismissed. (*Id.* ¶ 28.)

To investigate the circumstances surrounding his arrest, Mathus filed FOIA requests with the DuPage County State's Attorneys' Office on June 26, 2023, University Park on August 22, 2023, and its police department on August 22, 2023. (*Id.* ¶ 33.) University Park's entities did not respond. (*Id.* ¶ 34.) The DuPage County State's Attorneys' Office produced six pages of documents and various videos. (*Id.* ¶ 35.)

Before the Court are University Park's motions to dismiss Counts I and II for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), (R. 30), and to dismiss Count V for lack of jurisdiction under Rule 12(b)(1). (R. 56.) Motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6) are meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 885 (7th Cir. 2022) (Rule 12(b)(6)); *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (Rule 12(b)(1)). In either context, the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Gociman*, 41 F.4th at 885. In evaluating motions under Rule 12(b)(1) and Rule 12(b)(6), the Court applies the *Twombly-Iqbal* "plausibility" standard. *Silha,* 807 F.3d at 174. The complaint must provide enough factual information to state a claim to relief that is "plausible on its face" and raises a right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

**Counts I & II**

Counts I and II are brought under § 1983, which "creates a private right of action against any 'person' who violates the plaintiff's federal rights while acting under color of state law." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (quoting § 1983).[4] In *Monell v. Department of Social Services*, the Supreme Court held that local governmental entities are "persons" under § 1983. 436 U.S. 658, 690 (1978). Accordingly, "local governments like [University Park] can be held responsible for constitutional violations only when they themselves cause the deprivation of rights." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). To establish municipal liability, the complaint must plausibly allege: "a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority." *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 598 (7th Cir. 2019).

The complaint asserts "an act by an individual with policy-making authority" theory of *Monell* liability based on Wilson's role as the former Chief of the University Park Police. (FAC ¶¶ 29, 31.) A final policymaker has "authority to adopt rules for the conduct of government." *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992). "[A] single act or decision of a final policymaker can establish municipal policy." *McGreal v. Ostrov*, 368 F.3d 657, 685 (7th Cir. 2004) (quoting *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994)). To plausibly allege a final policymaker theory, the plaintiff must "first allege that a defendant is a final policymaker" and second, identify "the single act or single decision of that defendant constitut[ing] municipal policy." *McGreal*, 368 F.3d at 685. Here, the complaint claims that Wilson "had final policymaking authority" "on all matters" for the police department, "including . . . the use of police powers." (FAC ¶ 29.) The complaint further alleges a decision by Wilson using this authority by providing that she ordered her officers to arrest Mathus without probable cause. (*See id.* ¶¶ 23, 31.)

University Park argues that these allegations "are nothing more than unsupported conclusions" which fail to "plead facts to plausibly suggest Chief Wilson had final policymaking authority in a particular area on a particular issue that was the moving force behind [the plaintiffs'] injuries." (R. 31 at 3.) The Court disagrees; as referenced, "*Twombly* and *Iqbal* . . . require the plaintiff to 'provid[e] some specific facts' to support the legal claims asserted in the complaint." *McCauley v. City of Chi.* 671 F.3d 611, 616 (7th Cir. 2011). "The degree of specificity required is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *Id.* (citation omitted). Accordingly, "[i]n order to state a facially plausible . . . claim under *Monell,* the factual allegations in [the] complaint must allow . . . the reasonable inference that" Wilson is a final policymaker and made a decision that constituted municipal policy. *Id.* at 618; *McGreal*, 368 F.3d at 685.

---

[4] Subject matter jurisdiction over these federal claims is proper under 28 U.S.C. §§ 1331.

3

The above-described allegations satisfy these standards. Contrary to University Park's view, the complaint does not contain allegations that "a hypothetical decision-maker caused" the plaintiffs' harm. (*See* R. 31 at 3.) Rather, these allegations "contain sufficient factual matter to bring the plaintiffs' theory of liability 'across the line from conceivable to plausible.'" *McCauley*, 671 F.3d at 618 (quoting *Iqbal*, 129 S. Ct. at 1952). Specifically, the allegations make it plausible that Wilson was acting as a final policymaker in matters of policing when she ordered Mathus' arrest. The allegation that Mathus was indeed arrested following Wilson's order, (FAC ¶ 32) permits the inference that she had final policymaking authority with respect to arrest decisions.

University Park further asserts that the complaint should be dismissed for it "fails to specify any state or local law granting the Police Chief final policymaking authority within the Village of University Park." (R. 31 at 4.) But *Monell* claims are not held to a heightened pleading standard. *See McCormick v. City of Chi.*, 230 F.3d 319, 323 (7th Cir. 2000). Although the plaintiffs will ultimately be required to establish, by reference to applicable state or local law, that Wilson indeed was the final policymaker with respect to the police department's arrest decisions, *see Argyropoulos v. City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008), not doing so is not fatal at the motion to dismiss stage. *See, e.g.*, *McGreal v. Vill. of Orland Park*, No. 12 C 5135, 2013 WL 3984477, at *9 (N.D. Ill. Aug. 2, 2013) (concluding that the plaintiff had "sufficiently alleged at least one basis for *Monell* liability" by claiming the defendant "is a final policymaker who caused the constitutional deprivations complained of"); *see also Eckert v. City of Chi.*, No. 08 C 7397, 2009 WL 1409707, at *6 (N.D. Ill. May 20, 2009) (collecting "Post-*Bell Atlantic*" decisions of "other courts in this district . . . affirm[ing] *Leatherman's* holding that plaintiffs are not required to plead with specificity the existence of such a municipal policy"). The case cited by University Park involving a "similar provision of a municipal code," notably, was decided at summary judgment. (R. 31 at 5 (citing *Adams v. Szczerbinski*, No. 06 C 3459, 2007 WL 3119853, at *4–5 (N.D. Ill. Oct. 23, 2007)). The Court will similarly entertain the parties' arguments about the extent of Wilson's authority under University Park's municipal code at a later stage. The motion to dismiss Counts I and II is therefore, denied.

### Count V

University Park also seeks dismissal of Count V, arguing that the Court should not exercise supplemental jurisdiction over the plaintiffs' FOIA claim. (R. 57.) It argues that Count V does not share a "common nucleus of operative facts" with Counts I and II. (*Id.* at 5.) The Court disagrees and will exercise supplemental jurisdiction over the plaintiffs' state law claims.

28 U.S.C. § 1367(a) "lays out a framework by which courts may exercise supplemental jurisdiction over state law claims that share 'a common nucleus of operative facts' with a federal claim properly brought before the court." *Bailey v. City of Chi.*, 779 F.3d 689, 696 (7th Cir. 2015) (quoting § 1367(a)). "Once jurisdiction is established

4

based on a properly brought federal claim," like here with Counts I and II, there is "no requirement that such jurisdiction be relinquished" over state law claims. *Id.* Rather, "[t]he exercise of supplemental jurisdiction is purely discretionary." *Id.*

Here, there is "a common a nucleus of operative facts" because the FOIA claims arise from Mathus' effort to investigate the circumstances of his allegedly unlawful arrest and prosecution. (*See* FAC ¶¶ 33–35.) The information he claims was wrongfully withheld is probative of whether his arrest and prosecution were unsupported by probable cause. (*Id.* ¶¶ 23, 33–34.) The Court is not persuaded by University Park's argument that the claims do not share a common nucleus of operative facts because the essential facts of the arrest preceded the FOIA request. Without the unlawful arrest and malicious prosecution alleged in Counts I and II, there would have been no FOIA request for related documents. *See, e.g.*, *Ammerman v. Sween*, 54 F.3d 423, 425 (7th Cir. 1995) (affirming district court's exercise of supplemental jurisdiction over a state law assault claim with a federal Title VII claim regarding the defendants' actions following the assault); *Pogorzelska v. VanderCook Coll. of Music*, 442 F. Supp. 3d 1054, 1065 (N.D. Ill. 2020) (exercising supplemental jurisdiction in light of *Ammerman* because "the overlap between the investigation into the claim and the facts of the sexual battery allegation is both clear and strong"). Accordingly, the motion to dismiss Count V is denied.

Date: October 21, 2024

JEREMY C. DANIEL
United States District Judge